**MONTICELLO ELECTRIC PLANT BOARD et al., Appellants,**

v.

**DEPARTMENT OF REVENUE and James E. Luckett, Commissioner of Revenue, Appellees.**

Court of Appeals of Kentucky.

June 25, 1965.

STEWART, Judge.

This action was instituted in the Franklin Circuit Court by the Monticello Electric Plant Board (herein called "the plant board") and the City of Monticello (herein called "the city") for a declaration of rights on the question of whether the plant board and the city were liable for the payment of tax equivalents for the years 1955 through 1959. The Franklin Circuit Court dismissed the complaint and this appeal followed.

On September 16, 1947, the City of Monticello passed an ordinance which stated in substance it was the intention of the city to acquire and operate the Monticello Electric Light Company, a private corporation, in accordance with the provisions of KRS 96.-550 to KRS 96.900, inclusive, known as the "TVA Act." Monticello's intention culminated in the purchase of the Monticello Electric Light Company on January 20, 1954. The plant was operated thereafter by the city through the plant board, as provided by KRS 96.570. Until December 8, 1960, the plant board obtained power for this facility from Kentucky Utilities Company, a private corporation.

It is the contention of appellees that, as the plant board was organized, and has since been operated, under the TVA Act and as the city by ordinance agreed to all the provisions contained in, or that might be added by amendment to, the Act, the plant board and the city (hereinafter called appellants) were liable to the state for the years mentioned for tax equivalents, as such are denominated by the TVA Act. Appellants maintain the requirement for the payment of any tax equivalent to the state or to any taxing district in the state does not apply to a municipality which purchases electrical energy from sources other than TVA.

■ A "tax equivalent" is not an ad valorem tax; it is a legislative substitute for the loss of revenue which results to the various tax districts when a municipality, in order to supply a service, takes over a facility

Parker W. Duncan, Duncan & Allender, Bowling Green, Oldham Clarke, McElwain, Dinning, Clarke & Winstead, Louisville, for appellants.

Robert F. Matthews, Atty. Gen., William S. Riley, Asst. Atty. Gen., Robert J. Rieckhoff, Dept. of Revenue, Frankfort, for appellees.

formerly owned and operated by a private company which paid taxes.

KRS 96.560(3) reads:

"It hereby is declared to be the legislative purpose and intent to vest in municipalities of all classes in this Commonwealth full power and authority to establish, acquire, own and operate electric plants; to empower and authorize said municipalities to contract with and acquire from the Tennessee Valley Authority or any governmental agency electric power or current for resale and to authorize and require the payment, out of earnings from the resale of such electric power or current, of certain amounts to the state, counties, municipalities, school districts and other taxing districts in order that they may not suffer from loss of revenue resulting from the tax exemption created by the transfer of property from private to public ownership, and in the interest of the general welfare."

The first portion of the foregoing subsection was merely a reaffirmation of statutory authority already reposed in cities of the second to sixth classes to acquire and operate electric plants. See KRS 96.520 to KRS 96.540, inclusive. A new authority granted was the right to contract with TVA or any governmental agency for electric power or current for resale. See City of Middlesboro v. Kentucky Utilities Company, 284 Ky. 833, 146 S.W.2d 48. However, this new authority was accompanied by a requirement that tax equivalents be paid to the state and to all other taxing districts, to which taxes would be owed by a nonexempt privately owned utility company, "out of the earnings from *the resale of such electric power or current.*" (Emphasis added.)

■ It is apparent the purpose and intent of the TVA Act are clearly stated in the Act itself. A contract must first be entered into by a municipality with TVA to acquire its electrical energy; and, only after this agreement is consummated, is a condition imposed upon the municipality to pay tax equivalents. Furthermore, it is manifest that no municipality shall become liable for the payment of tax equivalents except *out of the earnings from the resale of such electrical energy as is acquired from TVA.* In the case at bar, from 1955 through 1959, there were no earnings from the resale of electric current and power obtained from TVA out of which tax equivalents could or should have been paid.

KRS 96.570(11), which outlines the authority of a plant board operating under the TVA Act, provides, so far as pertinent herein, that such a board may not contract with TVA for electrical current " * * * *unless* the contract shall provide that the resale rates of the board for electric service or electric energy shall be sufficient to cover * * * payments to the state, any county, any school district, any municipality, and any other special taxing district in which the board operates, of amounts determined as provided in Section 25 (KRS 96.820) of this Act * * *."

■ It is thus apparent the quoted provision of KRS 96.570(11) compels tax equivalents to be paid by a municipality *only when and if* it enters into a contract to purchase electrical energy from TVA. Stated differently, a limitation on the acquiring from TVA of electrical energy by a municipality for distribution is that it must pay tax equivalents out of all earnings from resales to each taxing district in which it supplies service. In the alternative, if the municipality decides not to contract with TVA for the purchase of electrical energy, it logically follows that the tax equivalents are not due to be paid.

■ Appellees rely upon KRS 96.820 to bolster their position, arguing this section specifically states that a municipality must pay tax equivalents under the facts presented. We do not agree. This statutory section merely prescribes the method of form-

ulating the tax equivalents required by KRS 96.570(11) to be paid whenever a municipality enters into a contract to buy electrical energy from TVA or any other governmental agency.

The exaction of the tax equivalent is a condition imposed by the Legislature upon municipalities as the price they must pay for the privilege of contracting with TVA for cheap electrical energy. In our opinion the TVA Act cannot be considered applicable to a situation where a municipality obtains electrical energy from other sources.

Wherefore, the judgment is reversed, with directions to enter a new one for appellants declaring void the tax assessments for the years 1954 to 1959, inclusive.